VIRGINIA:

BEFORE THE VIRGINIA STATE BAR DISCIPLINARY BOARD

IN THE MATTER OF                                    VSB DOCKET NO.
JOHN EDWARD WILLIAMS                                25-041-132606

## **MEMORANDUM ORDER OF SUSPENSION**

**THIS MATTER** came on to be heard on June 27, 2025, before a panel of the Virginia

State Bar Disciplinary Board (the "Board") consisting of David J. Gogal, Chair, presiding,

("Chair"), Alan S. Anderson, Mary Beth Nash, Alexander Simon and Samuel Massenberg, Lay

member. The Chair polled the members of the Board Panel as to whether any of them was

conscious of any personal or financial interest or bias which would preclude any of them from

fairly hearing this matter and serving on the panel, to which inquiry each member responded in

the negative.

The Virginia State Bar (the "VSB") was represented by Richard W. Johnson, Jr.,

Assistant Bar Counsel ("Bar Counsel"). John Edward Williams (the "Respondent" or

"Williams"), *pro se*, appeared in person and represented himself.

The court reporter, Beverly S. Horne, of Chandler and Halasz, P.O. Box 1975,

Mechanicsville, VA 23116, (804) 730-1222, after being duly sworn, reported the hearing and

transcribed the proceedings.

All legal notices of the date and place were timely sent by the Clerk of the Disciplinary

System (the "Clerk") in the manner prescribed by the Rules of the Supreme Court of Virginia,

Part Six, Section IV, Paragraph 13-18 of the Rules of Court.

The matter came before the Board on the District Committee Determination for

Certification by the Fourth District, Section I Subcommittee (hereinafter "District Committee

Certification"), pursuant to Part 6, Section IV, Paragraph 13-18 of the Rules of the Supreme Court of Virginia involving misconduct and other charges against the Respondent. Prior to the proceedings and at the final Pretrial Conference Call, VSB Exhibits 1-13 were admitted into evidence by the Chair, with no objection from the Respondent.  Respondent adopted all of VSB's exhibits to serve as his own.

The Board heard testimony from the following witnesses, who were sworn under oath: Bahram AzabDaftari, Complainant, Tiam AzabDaftari, and Respondent. The Board considered the testimony and exhibits introduced by the parties, heard arguments of counsel, and met in private to consider its decision.

## I.  FINDINGS OF FACT

The Board makes the following findings of fact based on clear and convincing evidence:

1. Since May 1974, and at all times relevant hereto, John Edward Williams has been an attorney licensed to practice law in the Commonwealth of Virginia.   His address of record with the VSB has been 3213 Duke Street, Suite 601, Alexandria, VA 22314.  The Respondent received proper notice of this proceeding as required by Part 6, Section IV, Paragraph 13-12 and 13-18.A of the Rules of the Virginia Supreme Court.

2. The Complainant, Bahram AzabDaftari, hereinafter referred to as "AzabDaftari", was represented by Williams in tax liability and lien matters pursued by the Internal Revenue Service ("IRS") against AzabDaftari and his non-profit, Imagination Tree Incorporated ("ITI").

3. On December 2, 2020 AzabDaftari received a solicitation letter from Williams seeking to represent AzabDaftari before the IRS in connection with the latter's tax collections against AzabDaftari and ITI. VSB Exh. 5, 0035.  The letter contains numerous doodles written on it, reflecting notes made by AzabDaftari concerning communications he had shortly after the

solicitation letter with Williams and others.

4.     That exhibit reflects a telephone conversation between AzabDaftari and Williams with notations of "JEW"[1], "$3,000", "1,000 now" and "1,000/in a week". The parties agreed that the second and third notation reflect that the parties discussed and understood that AzabDaftari would pay Williams a $1,000 retainer immediately and an additional $1,000 retainer within approximately a week.[2] However, the parties did not agree what the reference to "$3,000" meant; AzabDaftari testified that his figure represented their agreement for a cap on AzabDaftari's legal fees for the entire representation, while Williams said he had no recollection of any fee cap and that he did not mention any such figure to AzabDaftari during their discussion.[3]

5.     Williams sent to AzabDaftari an "Engagement Letter Agreement" dated December 31, 2020, which AzabDaftari executed personally and on behalf of ITI. VSB Exh. 9, 0094-0097. The Engagement Letter provided for an hourly rate to be charged by Williams and did not mention any cap on fees to be charged for the representation. Further, the General Terms and Conditions of Engagement, attached to the Engagement Letter, provided that any estimate, if this was what the $3,000 referred to, is "inherently inexact" and that Williams cannot be bound by such estimate unless specifically set forth in writing. Based upon the totality of the evidence submitted, the Board finds the figure "$3,000" was mentioned during the parties' telephone discussion and while AzabDaftari apparently believed it to be a cap on fees, the Board concluded

---

[1] This reference was to Williams' initials.
[2] The two retainers referenced by AzabDaftari's doodles were paid timely as set forth in AzabDaftari's notes.
[3] AzabDaftari's daughter, Tiam, was down the hall when her father and Williams had their initial telephone discussion, and she testified that she did hear the number "$3,000" mentioned during their discussion, although she didn't recall hearing any further details pertaining to same. She does recall her father meeting with her after the call and his interest in retaining Mr. Williams because of Mr. William's representation that it would cost them $3000 if they hired him.

that it instead was an estimate by Williams of what Williams anticipated the fees might be if he were retained.

6.      From the inception of the representation AzabDaftari was never made aware of the services which Williams was recording for any billing purposes. Although the Engagement Letter Agreement, and its attached Terms and Conditions, specifically provided that Williams would "invoice services on a monthly basis" and that Williams would "render on-account bills monthly" (VSB Exh. 9, 0094 and 0096), Williams never invoiced AzabDaftari for any legal services until December 21, 2022, many months after Williams terminated the relationship. At that time Williams claimed that AzabDaftari owed $10,867.50.

7.      Believing that he was operating with a cap on legal fees, AzabDaftari was shocked by the invoice and testified that had he known the legal fees were so high he would have terminated the legal relationship once the fees exceeded the anticipated cap. Williams testified that he did not invoice AzabDaftari because he knew AzabDaftari was in dire financial straits and wouldn't be able to pay the fees at that time, so Williams "agreed"[4] to "slow bill" AzabDaftari, thereby allowing AzabDaftari time to get his financial affairs in order.

8.      Since the" slow bill" process was contrary to the terms set forth in the Engagement Letter Agreement, the only support for modifying that engagement letter was Williams' testimony that such agreement had been reached. In the face of all the evidence, the Board did not find Williams' testimony credible.[5]

---

[4] AzabDaftari testified that he never had any discussions with Williams about "slow billing" and never agreed to have Williams hold up issuing invoices. The reason he did not initially complain about not receiving invoices was because he thought there was a $3,000 cap to the legal fees, and thus was not concerned about the amount that may have been accumulating.
[5] The Board concluded that Williams was aware that AzabDaftari would be relying on the $3000 estimate and that he delayed invoicing to prevent his client from realizing that the accumulating fees were much more than the estimate. It also is noteworthy that Williams' failure to regularly invoice,

9.      After Williams finally issued his first and only invoice in December 2022, the parties could not agree on the existence of a fee cap, and Williams undertook legal proceedings against AzabDaftari in Prince William County General District Court.[6]  On July 27, 2023, Williams filed a Warrant in Debt against AzabDaftari.  Williams filed there because he lived close to the courthouse, although his business address of record in Virginia was in the City of Alexandria.  AzabDaftari did not live in Prince William County but resided about one hour ten minutes west of the Prince William County Courthouse in Stephens City, Virginia and worked in Hagerstown, Maryland, an additional hour way from the Courthouse.  Williams was aware of this information and had been advised by AzabDaftari of the burden in attending court dates.

10.      During the pendency of the litigation, AzabDaftari moved to New York City to be near his daughter, Tiam.    AzabDaftari was the sole provider of Tiam, and she resided with him in New York.  Williams was aware of AzabDaftari's residence and his responsibilities to Tiam.

11.      Numerous hearing dates were set on the Warrant in Debt and then were postponed.  AzabDaftari travelled to the Courthouse from his various locations for all hearing dates, at considerable inconvenience.  Williams testified that any inconvenience was AzabDaftari's fault for not seeking to participate remotely.  Willaims testified that he did not inform AzabDaftari of this possibility. Williams initially offered the excuse that he only subsequently learned that the Prince William General District Court allowed remote participation but, later in the hearing, testified that he was aware that Courts in Virginia generally do allow

---

and thereafter belatedly issue his clients a significant final invoice, was not an anomaly, and appears to the Board, from the evidence and disciplinary record, to have been a regular practice of Williams.

[6] There is substantial doubt as to the existence of proper venue in the Prince Willam County General District Court. Its convenience to Williams, who testified that it was very close to his home, and a pro se defendant who did not understand legal concepts such as "venue" and was in no position to raise an objection, kept Williams pursuing numerous fee litigation matters there, without any evident concerns about its burden on the former clients who resided outside of Prince William County.

remote participation.

12.   The pending Warrant in Debt was finally scheduled for trial on December 27, 2023. Williams decided to non-suit the pending lawsuit in advance of the trial, but did not notify AzabDaftari until less than 90 minutes before the scheduled trial, too late for AzabDaftari from Stephens City, Virginia and his daughter from New York to avoid coming down to testify.[7] Further, Williams did not advise the AzabDaftaris that they did not have to come to court for the non-suit, and that it would be handled by Williams' mere filing of the nonsuit papers.

13.   As the reason for the nonsuit, Williams testified that he needed to amend downward the amount of his claim by a small amount and that it was in his best interest not to confuse the record before the judge with such a request.[8]

14.   Upon the filing of the instant Complaint, the VSB commenced an investigation. Despite the issuance of a subpoena *duces tecum,* Williams failed to provide pertinent information pertaining to any trust account or operating account records. Williams testified that he was unable to obtain any trust or escrow account records from his bank, Burke & Herbert, because they were "not available."[9] Further, Williams testified that some of his records were set forth in his check book, which he also failed to provide to the VSB.

15.   Williams failed to provide to VSB Investigator Foley appropriate records reflecting that the retainers provided by AzabDaftari were ever deposited in a trust account at his bank. Any bank or personal information provided by Williams fails to identify the client, the exact date of the transaction or when funds were received, the manner in which funds were received or disbursed, the source of the funds, or the purpose of the disbursement. Whatever

---

[7] AzabDaftari testified that such a trip for both of them necessitated more than ten (10) hours of roundtrip travel and the costs associated with that.
[8] The Board takes judicial notice that such amendments at trial are routine in General District Courts.
[9] The Board finds Williams' testimony about the availability of his account records from his bank incredulous.

records Williams had did not permit the reconciliation of trust account books and records with any bank statements, which also were not provided.

These deficiencies in Williams' recordkeeping and communications were compounded by his failure to comply with basic requirements for financial transparency and client notification. The absence of proper documentation not only made it impossible for Williams to verify the status of his retainer funds but also left regulatory investigators without a reliable means to assess whether client monies were handled appropriately.

## II.  NATURE OF MISCONDUCT

The following conduct by Respondent constitutes misconduct in violation of the following provisions of the Rules of Professional Conduct:

### Rule 1.4        Communication

**\*\*\*\***

**(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.**

By failing to invoice the client, or otherwise communicate with the client, about his aggregating legal fees after agreeing to do so, which would permit AzabDaftari to determine whether to continue the representation, Respondent violated the Rule of Professional Conduct 1.4(b) of the Rules of Professional Conduct.

### Rule 3.4        Fairness to Opposing Party and Counsel

**A lawyer shall not:**

* * * *

**(j) File a suit, initiate criminal charges, assert a position, conduct a defense, delay a trial, or take any other action on behalf of a client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.**

By moving for a non-suit with minimal notice[10] on the morning of trial of his previously filed Warrant in Debt, after the matter had been continued multiple times, and because of a dubious contention that it was in Williams' "best interest" to amend the Warrant in Debt to lower his claimed amount, all while aware of the inconvenience, travel and costs required of AzabDaftari and his daughter to appear from New York City, Respondent violated Rule 3.4(j) of the Rules of Professional Conduct.

### Rule 1.15      Safekeeping Property

****

**(a) Depositing Funds**

**(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts;....**

---

[10]Respondent knew that such notice was too late for AzabDaftari to avoid appearing in court, while compounding this by failing to advise Complainant that it was not necessary for Complainant to appear in court for the sole purpose of entry of the non-suit.

By failing to deposit the two retainer payments made by Complainant to Respondent in January 2021 into an identifiable trust account, Respondent violated Rule 1.15(a)(1) of the Rules of Professional Conduct.

### Rule 1.15        Safekeeping Property

**\*\*\*\***

**(b)  Specific Duties.  A lawyer shall:**

**\*\*\*\***

**(3) maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them;…**

By failing to maintain any records of AzabDaftari's payments to Respondent, failing to send monthly invoices as required by the Engagement Letter Agreement, and failing to offer or provide to AzabDaftari or the VSB an accounting of funds received by Respondent, Respondent violated Rule 1.15(b)(3) of the Rules of Professional Conduct.

### Rule 1.15        Safekeeping Property

**\*\*\*\***

**(c) Record-Keeping Requirements. A lawyer shall, at a minimum, maintain the following books and records demonstrating compliance with this Rule:**

**(1) Receipts and disbursements journals for each trust account.  These journals shall include, at a minimum: identification of the client or matter; date and amount of the transaction; name of the payor or payee;**

> manner in which the funds were received, disbursed, or transferred; and
> current balance.  A checkbook or transaction register may be used in lieu
> of separate receipts and disbursements journals as long as the above
> information is included.
>
> (2)  A client ledger with a separate record for each client, other person, or
> entity from whom money has been received in trust. Each entry shall
> include, at a minimum: identification of the client or matter; date and
> amount of the transaction; name of the payor or payee; source of funds
> received or purpose of the disbursement; and current balance.
>
> ****
>
> (4) All records subject to this Rule shall be preserved for at least five
> calendar years after termination of the representation or fiduciary
> responsibility.

By failing to maintain a receipts and disbursements journal, or to produce a checkbook or transaction register in lieu of such journal, that identifies each client or matter, the date and amount of the transaction, the name of the payee or payor, and the manner in which the funds were received, disbursed or transferred, Respondent violated Rule 1.15(c)(1) of the Rules of Professional Conduct.

By failing to maintain a separate client ledger for each client that identifies each client or matter, the date and amount of each transaction, the name of the payor or payee, the source of the funds received or purpose of disbursement, Respondent violated Rule 1.15(c)(2) of the Rules of Professional Conduct.

By failing to maintain adequate receipts and disbursements journals and client ledgers for five calendar years after termination of representation, Respondent violated Rule 1.15(c)(4) of the Rules of Professional Conduct.

**Rule 1.15    Safekeeping Property**

**\*\*\*\***

**(d) Required Trust Accounting Procedures.  In addition to the requirements set forth in Rule 1.15 (a) through (c), the following minimum trust accounting procedures are applicable to all trust accounts.**

**\*\*\*\***

**(3)  The following reconciliations must be made monthly and approved by a lawyer in the law firm:**

**(i) reconciliation of the client ledger balance for each client, other person, or entity on whose behalf money is held in trust;**

**(ii) reconciliation of the trust account balance, adjusting the ending bank statement balance by adding any deposits not shown on the statement and subtracting any checks or disbursements not shown on the statement. This adjusted balance must equal the balance in the checkbook or transaction register; and**

**(iii) reconciliation of the trust account balance ((d)(3)(ii)) and the client ledger balance ((d)(3)(i)). The trust account balance must equal the client ledger balance.**

By failing to maintain an accurate client ledger, Respondent was unable to perform monthly reconciliations. Therefore, Respondent violated Rule 1.15(d)(3)(i-iii) of the Rules of Professional Conduct.

**Rule 8.1        Bar Admission and Disciplinary Matters**

**An applicant for admission to the bar, or lawyer already admitted to the bar, in connection with a bar admission, any certification required to be filed as a condition of maintaining or renewing a license to practice law, or in connection with a disciplinary matter, shall not:**

**\*\*\*\***

**(c) fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.**

By failing to provide any trust account bank records or operating account records, despite making assurances that he would do so, in response to the VSB's subpoena *duces tecum,* Respondent violated Rule 8.1(c) of the Rules of Professional Conduct.

**Rules 1.5(b) – Fees; 8.1(a) – Bar Admission and Disciplinary Matters; and 8.4(c) – Misconduct**

As these violations have been pleaded, they have not been established by clear and convincing evidence.

### III.  IMPOSITION OF SANCTIONS

After the Board announced its findings by clear and convincing evidence, it received further evidence and argument in aggravation and mitigation from the VSB and Respondent, including Respondent 's prior disciplinary record which was received into evidence as VSB Exhibit 14. The Board recessed to deliberate what appropriate sanction to impose upon its findings underlying the violations by Respondent of the Rules of Professional Conduct.

The Board received testimony, and arguments, from both Respondent and Bar Counsel. Williams' disciplinary record reflects that he has been disciplined three times since 2022, ranging from public reprimands without terms to a suspension for a term of 30 days, effective August 20, 2024.

The Board also considered the following additional aggravating factors: (1) William's prior disciplinary record, with all of the proceedings occurring since 2022; (2) his multiple offenses over that period of time; (3) the seriousness of his recent violations; (4) his substantial experience of 50+ years in the practice of law; (5) his misrepresentations regarding his trust accounts during this proceeding; and (6) his lack of remorse and refusal to acknowledge the wrongful nature of his conduct.

The Board considered the implications of Williams' actions, not only in the specific matters involving AzabDaftari, but also in how such conduct reflects on the legal profession as a whole. Williams' choices demonstrated a lack of respect for procedural fairness and placed undue burdens on AzabDaftari, despite his awareness of personal challenges faced by his former client. These actions, coupled with his failure to adhere to agreed-upon billing practices and his lack of transparency throughout the litigation process, painted a troubling picture of disregard for

ethical standards and professional responsibility.

Following due deliberation and review of the exhibits, testimony, and arguments of Bar Counsel and Respondent, the Board reconvened in open session and announced that by unanimous vote, it is

ORDERED that the Respondent John Edward Williams' license to practice law in the Commonwealth of Virginia be SUSPENDED for a period of TWO YEARS, effective June 27, 2025.

It is further ORDERED that, as directed in the Board's June 27, 2025 Summary Order in this matter, Respondent must comply with the requirements of Part 6, Section IV, Paragraph 13-29 of the Rules of the Supreme Court of Virginia. The Respondent must forthwith give notice by certified mail, of the TWO YEAR SUSPENSION of his license to practice law in the Commonwealth of Virginia, to all clients for whom he is currently handling matters and to all opposing Attorneys and presiding Judges in pending litigation. The Respondent must also make appropriate arrangements for the disposition of matters then in his care in conformity with the wishes of his client. Respondent must give such notice immediately and in no event later than 14 days of the effective date of the Suspension, June 27, 2025, and make such arrangements as are required herein as soon as is practicable and in no event later than 45 days of the effective date of the Suspension. The Respondent must also furnish proof to the Clerk of the Disciplinary System of the Virginia State Bar within 60 days of the effective date of the Suspension that such notices have been timely given and such arrangements have been made for the disposition of matters.

It is further ORDERED that if the Respondent is not handling any client matters on the effective date of his Suspension, June 27, 2025, he shall submit an affidavit to that effect to the Clerk of the Disciplinary System at the Virginia State Bar within 60 days of the effective day of

14

the Suspension, June 27, 2025. The Board must decide all issues concerning the adequacy of the notice and arrangements required herein. The burden of proof shall be on the Respondent to show compliance. If the Respondent fails to show compliance, the Board may impose a sanction of Revocation or additional Suspension for failure to comply with the requirements of subparagraph 13-29.

It is further ORDERED that pursuant to Part 6, Section IV, Paragraph 13-9.E of the Rules of the Supreme Court of Virginia, the Clerk of the Disciplinary System shall assess all costs against the Respondent.

It is further ORDERED that the Clerk of the Disciplinary System shall mail an attested copy of this order to the Respondent by certified mail, return receipt requested, and by regular first-class mail to his address of record with the Virginia State Bar, being 3213 Duke Street, Suite 601, Alexandria, Virginia 22314, and a copy by electronic mail to Richard W. Johnson, Jr., Assistant Bar Counsel.

ENTERED this 9th day of July, 2025

VIRGINIA STATE BAR DISCIPLINARY BOARD

David J. Gogal, Chair